## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RAJNINDER JUTLA, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No. 24-4007-EFM-GEB** |
| | ) |
| ACUMEN ASSESSMENTS, LLC, | ) |
| SCOTT STACY,   MICHEAL SEELY, | ) |
| JOHN WHIPPLE, AND PETER GRAHAM | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## REPORT AND RECOMMENDATION OF DISMISSAL

This matter is before the Court on Plaintiff's Motion to Proceed Without Prepayment of Fees **(ECF No. 3,** *sealed***)** and supporting Affidavit of Financial Status **(ECF No. 3-1,** *sealed***)**. For the reasons outlined below, the Court **RECOMMENDS** Plaintiff's Motion be **DENIED** in the event her claims are allowed to proceed by the District Judge.  However, upon careful screening of the Complaint **(ECF No. 1)**, as required by 28 U.S.C. § 1915(e)(2)(B), the Court **RECOMMENDS** the District Judge **DISMISS** all claims without prejudice for failure to properly plead diversity jurisdiction and failure to state a claim upon which relief can be granted.

## I.    NOTICE

Within fourteen (14) days after a party is served with a copy of this Report and Recommendation, any party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to this Report and Recommendation. A party must file any

objections within the fourteen-day period if the party wants to have appellate review of the proposed findings of fact, conclusions of law, or recommended disposition.

## II.    Background[1]

On January 19, 2024, Plaintiff filed a Complaint against Acumen Assessments, LLC ("AA"), and its employees Dr. Scott Stacy, Dr. Michael Seely, Dr. John Whipple, and Dr. Peter Graham.  According to Plaintiff, Defendants are located in Kansas and are in the business of evaluating professionals, such as physicians, to determine if they are fit to practice.  Plaintiff, who currently resides in California, states she has practiced medicine since she was twenty-four-years-old in California, Oregon, and most recently Washington State.  Plaintiff asserts that after approximately twenty years of practicing medicine, the Washington Medical Commission ("WMC") questioned her fitness and "demanded" she undergo a fitness-for-duty evaluation at AA to obtain reinstatement of her medical license.

Plaintiff's Complaint centers on the manner in which Defendants conducted her fitness-for-duty evaluation and the corresponding report they produced.  She asserts twelve causes of action based on alleged injuries from the evaluation and report: medical malpractice, collusion, criminal entrapment, tortious interference with business, fraud and misrepresentation, *res ipsa loquitor*, defamation, libel, slander, violation of patient privacy, product liability, and intentional infliction of emotional distress.

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint and the Supplement to the Complaint (ECF Nos. 1 and 1-1). This background information should not be construed as judicial findings or factual determinations.

Specifically, Plaintiff asserts Defendants made false statements regarding the evaluation and in the report, which negatively impacted her medical career in pain management. She further states the evaluation and report were used by the WMC, the Oregon Medical Commission ("OMC"), and the United States Court for the Western District of Washington in a criminal case to revoke her medical license. To compensate her for the harm allegedly caused the by evaluation and report, she seeks actual and punitive damages in excess of six million dollars from Defendants.

## III.    Motion to Proceed Without Prepayment of Fees

Simultaneously with the filing her Complaint, Plaintiff filed a Motion to Proceed Without the Prepayment of Fees and a supporting Affidavit of Financial Status.[2]  Under 28 U.S.C. § 1915(a), the Court has discretion to authorize the filing of a civil case "without prepayment of fees or security thereof, by a person who submits an affidavit that . . . the person is unable to pay such fees or give security thereof."[3] Proceeding *in forma pauperis* in a civil case 'is a privilege, not a right—fundamental or otherwise.'"[4]

To determine whether a party is eligible to proceed without prepayment of the filing fee, the Court reviews the party's financial affidavit and compares the monthly expenses with the monthly income disclosed therein.[5]  The Court may also evaluate a plaintiff's

---

[2] ECF Nos. 3 and 3-1, *sealed.*
[3] *Barnett ex rel. Barnett v. Nw. Sch.*, No. 00-2499-KHV, 2000 WL 1909625, *1 (D. Kan. Dec. 26, 2000) (citing *Cabrera v. Horgas*, No. 98-4231, 173 F.3d 863, *1 (10th Cir. 1999)).
[4] *Id.* (quoting *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998)).
[5] *Alexander v. Wichita Hous. Auth.*, No. 07-1149-JTM, 2007 WL 2316902, *1 (D. Kan. Aug. 9, 2007) (citations omitted).

assets in determining an ability to pay the filing fee.[6] To succeed, plaintiffs must demonstrate they are financially unable to pay.[7] The current filing fee for a civil complaint in this District is $405.

Upon review of the income, expenses and assets listed in Plaintiff's Financial Affidavit, the Court determines there are sufficient assets to pay the filing fee. In making this decision, the Court recognizes Plaintiff's monthly expenses, but determines Plaintiff has income and assets such that paying the filing fee would not be an undue burden.

A magistrate judge does not have authority under 28 U.S.C. § 636 to deny a motion to proceed without prepayment of fees.[8] Accordingly, the undersigned **RECOMMENDS** Plaintiff's Motion to Proceed Without Prepayment of Fees **(ECF No. 3,** *sealed***)** be **DENIED** in the event the District Judge allows any of Plaintiff's claims to proceed. However, as explained below, the filing of a motion to proceed without paying fees triggers the Court's duty, under 28 U.S.C. § 1915(e)(2)(B), to screen Plaintiff's Complaint. After a careful screening, as also detailed below, the undersigned is recommending the District Judge dismiss all of Plaintiff's claims for failure to properly plead diversity jurisdiction and failure to state a claim upon which relief can be granted.

---

[6] *Wheeler v. Wichita Police Dep't.*, No. 97-1076-FGT, 1997 WL 109694, *1 (D. Kan. Feb. 27, 1997) (court denied motion where income was just sufficient to pay expenses, but plaintiff owned vehicle valued at $7,500); *Azzun v. Kansas Dept. of Health & Env't*, No. 09-4144-SAC, 2009 WL 5171778, *2 (D. Kan. Dec. 22, 2009) (court denied motion where significant home equity).
[7] *See* 28 U.S.C. § 1915(a)(1).
[8] *Lister v. Dep't. of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005) (the denial of plaintiff's motion to proceed in forma pauperis is a dispositive matter and the magistrate judge should issue a report and recommendation for de novo review by the district judge).

IV.    **Recommendation of Dismissal**

A.    **Failure to Properly Plead Diversity Jurisdiction**

Plaintiff's Complaint alleges the Court has subject-matter jurisdiction over her claims pursuant to 28 U.S.C. § 1332(a)(1), which requires complete diversity in citizenship between the parties and an amount in controversy exceeding $75,000.[9] While Plaintiff's Complaint claims more than $75,000 in damages, it fails to properly allege complete diversity of citizenship between the parties.

Federal courts are required to independently analyze the sufficiency of a complaint's assertion of diversity jurisdiction.[10] The party asserting diversity jurisdiction has the burden to establish it by a preponderance of the evidence.[11] Diversity jurisdiction only exists if no two opposing parties are citizens of the same state.[12] Here, the Court cannot discern, from a review of Plaintiff's Complaint, the citizenship of Defendants AA, Dr. Stacy, Dr. Seely, Dr. Whipple, and Dr. Graham to ensure they are all citizens of a different state than Plaintiff.[13]

The citizenship of an individual is determined by their *domicile,* not their *residence.*[14] Domicile is established not just by physical presence in the state but also a

---

[9] ECF No. 1 at 2.

[10] *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

[11] 28 U.S.C.A. § 1446; *Mid–Continent Pipe Line Co. v. Whiteley*, 116 F.2d 871, 873 (10th Cir. 1940); *Bair v. Peck*, 738 F. Supp. 1354, 1356 (D. Kan. 1990).

[12] *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014); *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008); *Salt Lake Tribune Publ'g Co. v. AT & T Corp.*, 320 F.3d 1081, 1095–96 (10th Cir. 2003).

[13] *See* ECF No. 1 at 2.

[14] *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015); *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir.1972).

demonstrated intent to remain in the state indefinitely.[15] On page two of the Complaint, Plaintiff alleges the citizenship of the "first-named" and "second-named" Defendants is Kansas. But the section above names three Defendants, Dr. Stacy, Dr. Seely and Dr. Whipple. The Court is unclear which two of these three Defendants are citizens of Kansas. Also, in the attachment to the Complaint, Plaintiff alleges because Defendants "reside and/or work in Kansas" diversity jurisdiction is met.[16] However, as explained above, an allegation of *residency* is insufficient proof of citizenship.

Further, Plaintiff alleges Defendant AA is a limited liability company ("LLC").[17] The citizenship of an LLC is determined by the citizenship of its members.[18] The party alleging diversity jurisdiction is required to plead both the members of the LLC and their citizenship.[19] Here, Plaintiff fails to list the member(s) of the LLC and their representative domicile(s). As such, Plaintiff's Complaint fails to establish Defendant AA's citizenship for purposes of establishing diversity jurisdiction.[20]

When plaintiffs fail to adequately plead diversity jurisdiction for the parties, dismissal without prejudice as to refiling is appropriate.[21] In this instance, the Court is

---

[15] *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir.1983); *Bair*, 738 F. Supp. at 1355.

[16] ECF No. 1-1 at 2.

[17] *Id*.

[18] *Siloam Springs*, 781 F.3d at 1234.

[19] *Cosgrove v. KKR Legends, LLC*, No. 15–2476–JWL, 2015 WL 1426327, at *1 (D. Kan. Mar. 27, 2015) ("Because the defendant-LLCs have members which are, in turn, LLCs, [the party alleging diversity] [is] required to allege the membership of those member-LLCs.").

[20] *Siloam Springs*, 781 F.3d at 1234.

[21] *Polaski v. Colo. Dep't of Transp*., 198 Fed. Appx. 684, 686 (10th Cir. 2006); *CU Capital Mkt. Sols., LLC v. Olden Lane Sec., LLC*, No. 18-2597-DDC-KGG, 2019 WL 2612940, at *6 (D. Kan. June 26, 2019).

unable to determine the citizenship of Defendants. Therefore, the undersigned recommends dismissal without prejudice due to lack of subject-matter jurisdiction.[22]

However, while the lack of proof of diverse citizenship is sufficient to recommend dismissal in and of itself, in light of the breadth of Plaintiff's claims, and because Plaintiff proceeds *pro se*, the Court deems it necessary to screen each of Plaintiff's claims in the Complaint as required by 28 U.S.C. § 1915(e)(2)(B).  As will be discussed in detail below, the Court finds, after screening, that each of Plaintiff's claims fail to state a claim on which relief can be granted.

### B.    Failure to State a Claim Upon Which Relief can be Granted

#### 1.    Screening Duty

When a party seeks to proceed without the prepayment of fees, 28 U.S.C. § 1915 1915(e)(2)(B) requires the court to screen the party's complaint. The purpose of screening is "the prevention of abusive or capricious litigation."[23] As relevant here, under § 1915(e)(2)(B)(ii), *sua sponte* dismissal is required if the court determines the action fails to state a claim upon which relief may be granted.  This requires the Court to review Plaintiff's Complaint under the same standard used when considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[24]  Under this standard, Plaintiff's Complaint "must allege sufficient facts to state a claim which is plausible—*rather than*

---

[22] 28 U.S.C.A. § 1332 (a).
[23] *Harris v. Campbell*, 804 F. Supp. 153, 155 (D. Kan. 1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989) (citing language contained in § 1915(d), prior to the statute's amendment in 1996)).
[24] *See Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

*merely conceivable*—on its face."[25]  "Factual allegations in a complaint must be enough to raise a right to relief above the speculative level."[26]

Because Plaintiff proceeds *pro se*, her pleadings must be liberally construed.[27] However, because a legally adequate complaint "demands more than naked assertions,"[28] Plaintiff still bears the burden to allege "sufficient facts on which a recognized legal claim could be based."[29]  And, the Court cannot "take on the responsibility of serving as [an] attorney in constructing arguments and searching the record."[30]

Ultimately, the Court must ascertain whether Plaintiff's Complaint provides Defendants with sufficient notice of her claims such that the Defendants could prepare an appropriate answer.[31]  To do so, Fed. R. Civ. P. 8 requires a complaint to contain three minimal pieces of information:  (1) a short and plain statement of the claim showing a plaintiff is entitled to relief; (2) a short and plain statement of the grounds for the Court's jurisdiction; and (3) a statement of the relief requested.[32]

---

[25] *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. Jan. 22, 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).

[26] *Kay,* 500 F.3d at 1218 (citing *Twombly*, 550 U.S. at 555) (internal citations omitted).

[27] *Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991).

[28] *Cohen v. Delong*, 369 F. App'x 953, 957 (10th Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)).

[29] *Bellmon*, 935 F. 2d at 1110.

[30] *Mays v. Wyandotte County Sheriff's Dep't*, 2010 WL 6032763, at *2 (10th Cir. 2011) (citing *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir.2005)).

[31] *See Snider v. Burton*, No. 15-1043-JTM-KGG, 2015 WL 1442096, at *1 (D. Kan. Mar. 30, 2015) (citing *Monroe v. Owens*, 38 F. App'x 510, 515 (10th Cir. 2002) and adopting report and recommendation).

[32] *See* Fed. R. Civ. P. 8(a); *Snider v. Burton*, No. 15-1043-JTM-KGG, 2015 WL 867423, at *2 (D. Kan. Mar. 2, 2015), *report and recommendation adopted*, No. 15-1043-JTM, 2015 WL 1442096 (D. Kan. Mar. 30, 2015).

If a complaint is "too general," then it will not provide fair notice to defendants.[33]

Similarly, "allegations of conclusions or opinions are not sufficient when no facts are

alleged by way of the statement of the claim."[34]   Additionally, bare legal conclusions,

unsupported by factual allegations, are not entitled to the assumption of truth.[35] Thus, to

pass muster, a complaint requires more than "labels and conclusions."[36] If the Court finds

Plaintiff's Complaint fails to meet these standards, even after construing the allegations

liberally, the Court "is compelled to recommend that the action be dismissed."[37]

### 2.    Kansas State Law Applies to the Court's Analysis

In diversity cases, the *Erie* doctrine instructs that federal courts must apply state

substantive law and federal procedural law.[38] Even though Plaintiff fails to properly plead

diversity jurisdiction, the Court will assume it applies for purposes of its duty to screen

Plaintiff's Complaint.   Therefore, because Plaintiff alleges diversity jurisdiction in the

District of Kansas, the Court applies Kansas choice of law rules to screen the claims.[39]

---

[33] *See Henderson v. Ojile*, No. 97-4098-SAC, 1997 WL 723432, at *2 (D. Kan. Oct. 31, 1997) (citing *Boston & Maine Corp. v. Town of Hampton*, 987 F.2d 855, 865 (1st Cir. 1993)).

[34] *Id*. (quoting *Bryan v. Stillwater Board of Realtors*, 578 F.2d 1319, 1321 (10th Cir. 1977)).

[35] *Alpenglow Botanicals, LLC v. U.S.*, 894 F.3d 1187, 1195 (10th Cir. 2018).

[36] *Singleton v. Convergys Corp.*, No. 16-2614-DDC-GLR, 2016 WL 11397820, at *2 (D. Kan. Sept. 21, 2016), *report and recommendation adopted*, No. 16-CV-2614-DDC-GLR, 2016 WL 7030056 (D. Kan. Dec. 2, 2016) (quoting *Bell Atl. Corp*, 550 U.S. at 555).

[37] *Snider*, 2015 WL 867423, at *2 (citing requirements under Rule 8).

[38] *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427, 116 S. Ct. 2211, 2219, 135 L. Ed. 2d 659 (1996); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216–17 (10th Cir. 2011).

[39] *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007); *Missouri Pac. R.R. Co. v. Kansas Gas & Elec. Co.*, 862 F.2d 796, 798 (10th Cir. 1988); *Snyder v. Am. Kennel Club*, 661 F. Supp. 2d 1219, 1229–30 (D. Kan. 2009) (citations omitted); *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1276 (D. Kan. 1998).

In Kansas, claims based in tort are controlled by the law of the state where the injury occurred.[40] Here, Plaintiff asserts her injuries arise from the evaluation and report, which were performed and prepared by Defendants in Kansas. Thus, the Court finds Kansas law applicable to the majority of Plaintiff's claims.[41] Therefore, in the sections below, the Court analyzes Plaintiff's twelve causes of action under Kansas law, where applicable, to determine if any state a valid claim upon which relief can be granted.

### 3.    Discussion

#### i.    Medical Malpractice

Plaintiff's first count is medical malpractice. In Kansas, medical malpractice claims require an underlying assertion of negligence against a healthcare professional in the diagnosis, care, and treatment of a plaintiff.[42] A plaintiff must show that (1) the defendant owed plaintiff a duty of care; (2) the defendant breached that duty; and (3) defendant's negligence caused plaintiff's injury.[43] Plaintiffs Complaint fails to allege all three.

First, Plaintiff fails to establish any Defendant owed her a duty or breached a duty. As required by Kansas law, duty in a medical malpractice action requires the existence of

---

[40] *St. Paul Furniture Mfg. Co. v. Bergman*, 935 F. Supp. 1180, 1187 (D. Kan. 1996); *see also Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731 (Kan. 1985).

[41] ECF No. 1-1 at 2.

[42] *Treaster v. HealthSouth Corp.*, 442 F. Supp. 2d 1171, 1179 (D. Kan. 2006); *see also Sharples v. Roberts*, 816 P.2d 390, 397 (Kan. 1991); *Webb v. Lungstrum*, 223 Kan. 487, 490, 575 P.2d 22 (Kan. 1978).

[43] *Rodock v. Moore*, No. 21-2050-DDC, 2023 WL 2266157, at *6 (D. Kan. Feb. 28, 2023); *Cohen v. Lockwood*, No. CIV.A. 02-2246-CM, 2002 WL 31527716, at *1 (D. Kan. Nov. 5, 2002); *Rios v. Bigler*, 847 F. Supp. 1538, 1542 (D. Kan. 1994); *see also Watkins v. McAllister*, 30 Kan. App. 2d 1255, 1258, 59 P.3d 1021 (Kan. App. 2002).

a physician-patient relationship.[44] A physician-patient relationship only exists when the relationship is ongoing, or the physician impliedly consents to advise or treat the plaintiff.[45] The Complaint fails to allege *which* Defendants, if *any*, treated Plaintiff before her evaluation or consented to the care of Plaintiff beyond the evaluation.[46] Further, when a psychologist is hired to perform an examination of an individual for a third party, it does not create a presumption of a physician-patient relationship, and consent is still the relevant question.[47] Therefore, by failing to allege a physician-patient relationship, Plaintiff cannot establish either a duty or a breach of that duty.[48]

Second, Plaintiff fails to establish a causal connection between the evaluation and report and her injuries. To establish the element of causation, the negligence must have caused or foreseeably contributed to the event that caused a plaintiff's injury.[49] But here, Plaintiff admits the preparation of the report by Defendants was not a medical error.[50] Rather, she asserts the claim is based in "intentional and criminal masterminding," not medical negligence.[51] The masterminding she alleges is the production of the report in order to "find something wrong" with the Plaintiff so Defendants could continue receiving

---

[44] *Talavera ex rel. Gonzalez v. Wiley*, 725 F.3d 1262, 1269 (10th Cir. 2013); *Greig v. Botros*, No. 08-1181-EFM, 2011 WL 890398, at *3 (D. Kan. Mar. 14, 2011); *Deya v. Hiawatha Hosp. Ass'n, Inc.*, No. 10-CV-2263-JAR/GLR, 2011 WL 1698774, at *2 (D. Kan. May 4, 2011).
[45] *Talavera*, 725 F.3d 1262, 1270; *Greig*, No. 08-1181-EFM, 2011 WL 890398, at *3; *see also Adams v. Via Christi Reg'l Med. Ctr.*, 19 P.3d 132, 140 (Kan. 2001).
[46] ECF No. 1-1 at 6.
[47] *Talavera*, 725 F.3d at 1270; *Greig,* 2011 WL 890398, at *3.
[48] *Talavera,* 725 F.3d at 1269–70; *Deya*, 2011 WL 1698774, at *2; *see also Irvin v. Smith*, 31 P.3d 934, 942 (Kan. 2001).
[49] *Townson v. Huynh*, No. 18-2151-JWB, 2020 WL 1433488, at *5 (D. Kan. Mar. 24, 2020); *see also Allman v. Holleman*, 233 Kan. 781, 785 (Kan. 1983).
[50] ECF No. 1-1 at 6:19-20.
[51] *Id*.

business referrals from the WMC.[52] Plaintiff alleges her injuries include the loss of her medical license and ultimately her pain management practice through the WMC's regulation.[53] Therefore, Plaintiff has not plausibly pled her injury was caused by a medically negligent act of Defendants, as is required for a medical malpractice claim.[54]

Because Plaintiff's Complaint fails to state the three required elements of a medical malpractice claim – duty of care, breach, and causation – the undersigned recommends dismissal of count one.

### ii.    Collusion with State Medical Boards "via" Kickback

In both counts two and four, Plaintiff alleges collusion "via" kickback between the WMC and Defendants.[55] Plaintiff asserts the individual Defendants, through their association with Defendant AA, colluded with the WMC to find "something wrong" with her, and then falsely placed it in the report in order to receive a "kickback."[56] The alleged kickback is the referral of more business from the WMC to Defendant AA.[57] Under the applicable law, kickback allegations must be pled with particularity and adequate plausibility.[58] However, Plaintiff's Complaint does neither.

---

[52] *Id*. at 7:10.

[53] *Id*. at 8.

[54] *See Id*. at 6:19-20; *see also Townson*, 2020 WL 1433488 at *5; *Wilcheck v. Doonan Truck & Equipment, Inc*., 220 Kan. 230, 235 (Kan. 1976); *Latshaw v. Mt. Carmel Hosp*., 53 F. Supp. 2d 1133, 1139 (D. Kan. 1999); *Allman v. Holleman*, 233 Kan. 781, 667 P.2d 296 (Kan. 1983).

[55] ECF No. 1-1 at 6 & 8.

[56] *Id*. at 3.

[57] *Id*. at 7:10.

[58] *United States v. Medtronic, Inc.*, No. 17-2060-DDC-KGG, 2021 WL 4168140, at *20 (D. Kan. Sept. 14, 2021); *Haarslev, Inc. v. Muir*, No. CV 23-2567-KHV, 2024 WL 1256080, at *7 (D. Kan. Mar. 25, 2024*); United States ex rel. Schroeder v. Medtronic, Inc*., No. 17-2060-DDC-KGG, 2023 WL 5152513, at *8 (D. Kan. Aug. 10, 2023).

The alleged kickback scheme is simply not supported by the facts alleged in the Complaint.  For example, Plaintiff alleges Defendant Dr. Morgan told her "no one is ever found to be unfit," and on occasion he sees referral to a few months of therapy.[59] Additionally, Plaintiff alleges her review of disciplinary actions for the last five years found no physician diagnosed as unfit to practice by Defendant AA resulting in a revocation of a license.[60]  If the kickback scheme depends on Defendant AA finding professionals unfit in order to gain more referrals, these facts don't support frequent findings of unfitness.  In other words, Plaintiff fails to factually support a kickback scheme when she alleges she is the first person, in at least five years, Defendant AA has found unfit to practice medicine.[61]

Since Plaintiff fails to plead a kickback scheme that is plausible on its face, the undersigned recommends dismissal of both counts two and four.

### iii.    Criminal Entrapment

In count three, Plaintiff alleges WMC criminally entraps physicians into using Defendant AA to conduct fitness-for-duty evaluations by listing it as WMC's sole provider for such evaluations.[62]  However, Plaintiff fails to list any facts asserting the named Defendants are liable for the alleged entrapment.[63]  Where a pleading fails to state a plausible claim for relief against a named defendant, dismissal is appropriate.[64]

---

[59] ECF No. 1-1 at 4:7-8.
[60] *Id*. at 4:9-11.
[61] *Id*. at 4:12-13.
[62] *Id*.
[63] *Id.* at 7.
[64] *Iqbal*, 556 U.S. at 678 (2009).

Additionally, criminal entrapment does not give rise to a civil cause of action.[65] Entrapment is a defense in criminal cases and applies to misdeeds of law enforcement officials, which is not at issue here.[66] The "dubious" relationship Plaintiff asserts is a mere conclusion with no facts to support an underlying civil claim against the Defendants.[67]

Because the alleged criminal entrapment claim fails to assert liability against Defendants and cannot be a civil cause of action, the undersigned recommends dismissal.

### iv.    Tortious Interference of Business

In count five, Plaintiff alleges Defendants' report tortiously interfered with her pain management practice.[68] In Kansas, claims based in tort are controlled by the law of the state where the injury occurred.[69] And for tortious interference in business claims, where the economic harm was felt should be evident.[70] Here, Plaintiff fails to isolate the place where her economic harm was felt.[71] In her Complaint, Plaintiff asserts she owned clinics in

---

[65] *Garrett's Worldwide Enterprises, LLC v. United States*, No. 14-2281-JTM, 2015 WL 11825762, at *6 (D. Kan. Mar. 6, 2015).

[66] *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) ("Entrapment occurs only when the criminal conduct was the product of the creative activity of law-enforcement officials, [...] when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute."); *United States v. Martinez*, 979 F.2d 1424, 1431-32 (10th Cir.1992), cert. denied 507 U.S. 1022, 113 S.Ct. 1824, 123 L.Ed.2d 454 and 509 U.S. 913, 113 S.Ct. 3019, 125 L.Ed.2d 708 (1993).

[67] ECF No. 1-1 at 7; *Alpenglow Botanicals*, 894 F.3d at 1195; *Iqbal*, 556 U.S. at 678.

[68] ECF No. 1-1 at 8.

[69] *Snyder*, 661 F.Supp.2d at 1230; *St. Paul Furniture*, 935 F. Supp. at 1187; *see also Ling*, 237 Kan. at 634.

[70] *Snyder*, 661 F.Supp.2d at 1230; *Energy Consumption Auditing Servs., LLC v. Brightergy, LLC*, 49 F. Supp. 3d 890, 894 (D. Kan. 2014); *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1286 (D. Kan.1997); *Altrutech*, 6 F.Supp.2d at 1276.

[71] ECF No. 1-1 at 8.

Washington, Oregon, and California.[72] Yet in alleging interference, the Complaint fails to state *where* the harm – the closure and failed sale of her business – was felt.[73]  Under a liberal construction of the pleadings, the Court struggles to discern enough jurisdiction to analyze her claim under the applicable law.

Even if jurisdiction was present, Plaintiff fails to establish intentional malicious conduct by Defendants, as required for tortious interference claims.[74] Plaintiff's Complaint is void of any facts alleging the Defendants knew of her pain management practice or of its prospective sale when creating the Report.[75] Further, Plaintiff seems to allege only indirect interference, and not anything intentional or malicious.  The Complaint incorporates by reference a Sentencing Memo filed in Plaintiff's Washington District Court criminal case.[76] Plaintiff alleges the report was cited in this Sentencing Memo, which "no doubt" led the Judge to ban Plaintiff from practicing medicine during her probation.[77] Thus, these allegations fail to rise above the speculative level to determine malice and intent on the part of any Defendant for a claim of tortious interference in business.[78]

Because Plaintiff fails to establish the exact place of the harm, or malice and intent, the undersigned recommends dismissal of count five.

---

[72] *Id*. at 2:7.
[73] *Id*. at 8.
[74] Restatement (Second) of Torts § 767; *Altrutech,* 6 F. Supp. 2d at 1277; *Bushnell*, 973 F. Supp. at 1289; *St. Paul Furniture,* 935 F. Supp. at 1187.
[75] ECF No. 1-1 at 8.
[76] 19-CR-00141-RSM, *U.S. v. Rajninder Jutla*, W.D. Wash., Government's Sentencing Memorandum, ECF No. 109.
[77] ECF No. 1-1 at 8.
[78] Fed. R. Civ. P. 8; *Bryan,* 578 F.2d 1319 at 1321; *Swanson*, 750 F.2d at 813.

### v.   Fraud and Misrepresentation

In count six, Plaintiff pleads fraud and misrepresentation based on what she alleges are false conclusions in the report indicating she has a personality disorder, is a danger to her patients, and is medically unsafe.[79]

Allegations of fraud must be plead with particularity per Fed R. Civ. P. 9(b).[80] "In other words, the plaintiff must set out the 'who, what, where, and when' of the alleged fraud."[81] This requires clear statements of fact to put the defendant on notice of the fraudulent scheme alleged.[82] While Plaintiff alleges the loss of the medical license she held for twenty-two years, she fails to allege a benefit was conferred on any of the named Defendants through a fraudulent scheme.[83]  If Plaintiff is attempting to tie the kickback allegations to her claims of fraud, particular details of the fraudulent scheme are still required.[84] Because plaintiff fails to allege fraud with any particularity of events, amounts, names, or dates, and the undersigned recommends dismissal.[85]

### vi.   Res Ipsa Loquitor/Negligence Per Se

In counts six and seven, Plaintiff alleges claims based in *res ipsa loquitor* and negligence *per se*.[86] Her *res ipsa loquitor* claims assert the negligence in the report "speaks

---

[79] ECF No. 1-1 at 8.
[80] *Iqbal*, 556 U.S. 662 at 686.
[81] *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001).
[82] *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).
[83] ECF No. 1-1 at 8-9.
[84] *Schrag v. Dinges*, 788 F. Supp. 1543, 1550 (D. Kan. 1992); *Wichita Fed. Sav. & Loan Ass'n v. Landmark Grp., Inc.*, 657 F. Supp. 1182, 1191-92 (D. Kan. 1987).
[85] *Medtronic, Inc.*, 2021 WL 4168140 at *10 (citations omitted); *Meyer v. Cloud Cnty. Bank & Tr.*, 647 F. Supp. 974, 975 (D. Kan. 1986).
[86] ECF No. 1-1 at 8-9.

for itself."[87] The negligence *per se* claim asserts Defendant AA's publication of the report violates state and federal law and caused the revocation of her medical license.[88] However, Plaintiff fails to assert an injury of the kind that gives rise to a claim under either doctrine.[89]

Under Kansas law, claims of *res ipsa loquitor* require: (1) the thing or instrumentality causing the injury or damage be within the exclusive control of the defendant; (2) the injury must be of the kind that ordinarily would not occur in the absence of someone's negligence; and (3) the injury must not be due to the contributory negligence of plaintiff.[90] It is rare for the doctrine to apply in medical malpractice cases as the harm of professional treatment needs to be the kind obvious to a lay person, like a foreign object left after surgery.[91] Here, the alleged injuries, the loss of Plaintiff's medical license and practice, are not injuries that could only occur as the result of medical negligence as understood by the average person.[92] Plaintiff herself pleads additional causes of the harm.[93] Without negligence that speaks for itself, the doctrine is inapplicable.[94]

---

[87] *Id.*

[88] *Id.* at 9:15.

[89] *Id.* at 8-10.

[90] *Seely v. Chambers Plastering & Exterior Coating, Inc.*, 993 F. Supp. 1381, 1384 (D. Kan. 1998); *Russell v. Pay Way Feed Mills, Inc.*, 221 F. Supp. 314, 318–19 (D. Kan. 1963); *see also Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 795 P.2d 915, 933 (Kan. 1990).

[91] *Palmer v. Shawnee Mission Medical Center, Inc.*, 2017 WL 5629624, at *8-9 (D. Kan. Nov. 22, 2017); *Tarantola v. Cushing Memorial Hosp.*, 2012 WL 5877532, at *3 (D. Kan. Nov. 20, 2012) (discussing common knowledge exception); *Cohen*, 2003 WL 21384313 at *2; *see also Frans v. Gausman*, 6 P.3d 432, 439 (Kan. Ct. App. 2000) ("[R]es ipsa doctrine is seldom applicable in actions for damages by patients against physicians.").

[92] ECF No. 1-1 at 9-10.

[93] 19-CR-00141-RSM, Sentencing Memorandum, ECF No. 109.

[94] *United States v. Kesinger*, 190 F.2d 529, 531–32 (10th Cir. 1951); *Atchison T. & S. F. Ry. Co. v. Simmons*, 153 F.2d 206, 208 (10th Cir. 1946); *see also Emigh v. Andrews*, 191 P.2d 901, 903 (Kan. 1948).

Further, even if *res ipsa loquitor* was applicable to Plaintiff's claim, Plaintiff fails to establish any named Defendant had exclusive control of the report. Application of the doctrine requires a clear allegation the defendant had the thing or instrumentality which caused injury in its exclusive control.[95] However, Plaintiff makes no allegation the report caused harm through the exclusive control of any Defendant.[96] Instead, Plaintiff alleges the report caused the revocation of her medical license when "harnessed" by both the OMC and WMC.[97] Thus, Plaintiff fails to allege any named Defendant had exclusive control over the report causing her harm, and dismissal is appropriate for failure to state a claim upon which relief can be granted.[98]

As to the negligence *per se* claim, Plaintiff must establish: (1) a violation of a statute, ordinance or regulation; and (2) damages which result from the violation.[99] Plaintiff does not isolate a specific state or federal statute the creation of the report violates.[100] If Plaintiff is attempting to tie her HIPAA allegations to this count, Plaintiff must establish the

---

[95]*Hervey v. U.S.*, No. 19-4033-SAC-ADM, 2020 WL 1809748, at *4 (D. Kan. 2020) (citing *Hubbard v. Mellion*, 302 P.3d 1084, 1094 (Kan. App. 2013) ("for res ipsa loquitur to apply, the defendant must have the thing or instrumentality which caused injury or damage to the plaintiff in defendant's exclusive control")); *Jetcraft Corp. v. FlightSafety Int'l, Inc.*, 781 F. Supp. 687, 696 (D. Kan. 1991).
[96] ECF No. 1-1 at 9.
[97] *Id.*
[98] *Palmer*, No. 16-2750-DDC-GLR, 2017 WL 5629624 at *8.
[99] *Seely*, 993 F. Supp. at 1384; *see also OMI Holdings, Inc., v. Howell*, 260 Kan. 305, 339, 918 P.2d 1274, 1296 (Kan. 1996).
[100] ECF No. 1-1 at 9:15.

legislature intended an individual right of action for injury arising out of the violation.[101] Without a specific statute the report violates, dismissal of this claim is appropriate.[102]

Because Plaintiff fails to assert claims upon which relief can be granted under either the doctrine of *res ipsa loquitur* or negligence *per se,* the undersigned recommends dismissal of counts six and seven.

### vii.    Defamation, Libel, Slander per se

In counts eight and nine Plaintiff alleges Defendant AA defamed her when they made calls to the WMC and OMC asserting Plaintiff suffered from Narcissistic Personality Disorder and placed those findings in the report.[103] These allegations appear to be conclusory in nature. Conclusory allegations of falsehood are explicitly excluded from defamation liability.[104]

Under Kansas law, defamation consists of false and defamatory words, communicated to a third person, which result in harm to the reputation of the person defamed.[105] Rather than viewing each count as distinct causes of action, in Kansas "[t]he

---

[101] *Vanderwerf v. SmithKlineBeecham Corp.*, 414 F. Supp. 2d 1023, 1026–27 (D. Kan. 2006); *Sturm v. Cude,* No. CV 22-1188-KHV, 2023 WL 8647207, at *3 (D. Kan. Dec. 14, 2023); *see also OMI*, 918 P.2d at 1297.

[102] *LeTourneau v. Venture Corp.*, No. 15-CV-2629-JAR, 2017 WL 2378331, at *6 (D. Kan. June 1, 2017); *Vanderwerf*, 414 F. Supp. 2d at 1028; *see also OMI*, 918 P.2d at 1298.

[103] ECF No. 1-1 at 10-11.

[104] *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017); *Ali v. Douglas Cable Commc'ns*, 929 F. Supp. 1362, 1384 (D. Kan. 1996); *Castleberry v. Boeing Co.*, 880 F. Supp. 1435, 1443 (D. Kan. 1995).

[105] *Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir.1983) (applying Kansas law); *Dow v. Teramara, Inc.*, No. 90–1412, 1992 WL 403093 at *8 (D. Kan. 1992) (citing Restatement Second of Torts § 652E).

tort of defamation includes both libel and slander."[106] "[A] defamation complaint cannot couch allegations of falsity in vague, conclusory terms."[107] To sufficiently plead a defamation claim, a complaint must allege the defamatory words, the communicator of those words, the persons to whom those words were published and the time and place of publication.[108] Here, Plaintiff merely concludes the personality disorder diagnosis was false and unsupported by data.[109] Such vague and conclusory allegations of falsehood fail to give rise to a defamation claim.[110]

Further, Plaintiff asserts the statements were made between Defendant AA, the party who conducted her fitness-for-duty evaluation, and the OMC and WMC.[111] Plaintiff then states WMC published the report on its "website of physician reprimanding."[112] While these allegations may assert a publication, they fail to state any Defendant was responsible for the publication on WMC's website.[113] Thus, Plaintiff's Complaint fails to give the Court the necessary facts to establish a claim based on false statements or a publication by any named Defendant. As such, the undersigned recommends dismissal of counts eight and nine.[114]

---

[106] *Ali*, 929 F. Supp. at 1384; *Polson v. Davis*, 635 F. Supp. 1130, 1146 (D. Kan. 1986), aff'd, 895 F.2d 705 (10th Cir. 1990).

[107] *Brokers' Choice*, 861 F.3d at 1105; *Adams v. Kinder–Morgan, Inc.*, 340 F.3d 1083, 1088 (10th Cir. 2003); *Vazirani v. Heitz*, No. CIV.A. 09-1311-MLB, 2011 WL 915377, at *4 (D. Kan. 2011).

[108] *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1271–72 (D. Kan. 2008); *Marten v. Yellow Freight Sys., Inc.*, 993 F. Supp. 822, 829 (D. Kan. 1998); *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1287 (D. Kan. 1997).

[109] ECF No. 1-1 at 10:12.

[110] *Brokers' Choice*, 861 F.3d at 1105; *Adams*, 340 F.3d at 1088; *Vazirani*, 2011 WL 915377 at *4.

[111] ECF No. 1-1 at 10:6-7.

[112] *Id.* at 10:14.

[113] *Id.* at 10.

[114] *Brokers' Choice*, 861 F.3d at 1105.

### viii.    Violation of Patient Privacy

Count ten asserts a violation of patient privacy under the Health Insurance Portability and Accountability Act ("HIPAA").[115]  Specifically, Plaintiff alleges the report disclosed her patient information to third parties without her consent.[116] According to HIPAA, a covered entity is "(1) A health plan. (2) A health care clearinghouse. [or] (3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by" 45 C.F.R. §160.103.[117] And, unauthorized disclosure of a patient's medical information by a covered entity, such as doctors, clinics, and psychologists, under certain circumstances, is protected by the Act.[118]

Plaintiff, however, fails to allege which Defendant is a covered entity.  As previously discussed, the act of conducting a fitness-for-duty evaluation does not create the presumption of a physician-patient relationship. And even if Plaintiff alleged any Defendant was a covered entity, a provider may disclose protected health information to an appropriate entity if necessary to prevent or lessen a serious and imminent threat to the health or safety of a person or the public, or to make disclosures otherwise required by law.[119]  Results of a fitness-for-duty evaluation for a licensed physician, sent to relevant parties, are seemingly for the health and safety of the public.

---

[115] ECF No. 1-1 at 11.
[116] *Id.*
[117] 45 C.F.R. § 160.103.
[118] 45 C.F.R. § 160-64; 45 C.F.R. 164.512(j); 45 C.F.R. 164.512(a).
[119] 45 C.F.R. 164.512(j); 45 C.F.R. 164.512(a).

But, even if such a disclosure was protected, HIPAA does not create a private cause of action.[120]  Rather, persons must complain to the Secretary of Health and Human Services regarding the misuse of health data, and the Secretary takes action against the regulated entity.[121]

Because Plaintiff fails to establish the existence of a covered entity and because HIPAA does not create a private right of action, the undersigned recommends dismissal of count ten.[122]

### ix.    Product Liability

In count eleven, Plaintiff asks the Court, under a products liability theory, to find the report a "defective" product, which would make Defendants liable for the "emotional/psychological harm" she alleges she suffered as a result of the report's creation.[123] However, even assuming the report qualifies as a "product," Plaintiff's claim is not viable under the Kansas Product Liability Act ("KPLA").[124]

---

[120] 45 CFR 160.306(b); *Freier v. Colorado*, 804 F. App'x 890, 891 (10th Cir. 2020); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) ("HIPAA does not create a private right of action for alleged disclosures of confidential medical information.").

[121] 45 CFR 160.306(b).

[122] *Hasenbank v. Gronniger*, No. 20-4082-JTM-ADM, 2021 WL 784782 (D. Kan. Feb. 2, 2021); *Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 628 (D. Kan. 2014) (dismissal for failure to establish a regulated entity); *Freier*, 804 F. App'x and 892 (affirming dismissal because Plaintiff had no private right of action under HIPAA).

[123] ECF No. 1-1 at 12.

[124] K.S.A. §§ 60–3301 to 60–3307.  The KPLA applies to all product liability claims regardless of the substantive theory of recovery.  *Smith v. Janssen Pharms., Inc.*, No. 15-9085-JAR, 2017 WL 747648, at *2 (D. Kan. Feb. 27, 2017), aff'd, 695 F. App'x 408 (10th Cir. 2017); *Danaher v. Wild Oats Markets, Inc.*, 779 F. Supp. 2d 1198, 1209 (D. Kan. 2011).

First, the KPLA explicitly excludes health care providers who utilize "a product in the course of rendering professional services" from coverage.[125] Here, Plaintiff alleges the Defendants are health care providers who created the report - the product Plaintiff alleges caused her harm – in the course of rendering a professional service, her fitness-for-duty evaluation.[126]

Second, and more importantly, the KPLA does not protect the kind of harm Plaintiff alleges.[127] The relevant statute only covers emotional and psychological harms when they are attendant to personal physical injuries, illness, or death.[128] Here, Plaintiff alleges "emotional/psychological harm," but does not connect it to a physical injury caused by the report.[129] Thus, Plaintiff fails to plead a prima facie case for products liability under Kansas law.[130] As such, relief cannot be granted for Plaintiff's alleged injuries and the undersigned recommends dismissal of the product liability claims.

---

[125] K.S.A. § 60–3302(a).

[126] ECF No. 1-1 at 5 & 12.

[127] *See Borst v. HoneyCocoon*, No. 20-2441-JWB, 2022 WL 990741, at *2 (D. Kan. Apr. 1, 2022); *Mattos*, 2012 WL 1893551, at *3.

[128] K.S.A. § 60–3302(d); *Mattos*, 2012 WL 1893551, at *3.

[129] ECF No. 1-1 at 12.

[130] *Messer v. Amway Corp.*, 210 F. Supp. 2d 1217, 1227 (D. Kan. 2002), aff'd, 106 Fed. Appx. 678 (10th Cir. 2004) (unpublished) (citing *Jenkins v. Amchem Prods., Inc.*, 256 Kan. 602, 630, 886 P.2d 869, 886 (Kan. 1994)) ("To establish a prima facie case based on negligence or strict liability in a products liability case, plaintiff must produce evidence to establish three elements: (1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left defendant's control."); *Smith v. Janssen Pharms., Inc.*, No. 15-9085-JAR, 2017 WL 747648, at *3 (D. Kan. Feb 27, 2017), aff'd, 695 F. App'x 408 (10th Cir. 2017); *Kernke v. The Menninger Clinic, Inc.*, 173 F. Supp. 2d 1117, 1122 (D. Kan. 2001).

### x.   Intentional Infliction of Emotional Distress

In the twelfth and final count Plaintiff claims intentional infliction of emotional distress based on the allegedly false statements Defendants placed in the report.[131] Plaintiff alleges, without any supporting facts, WMC colluded with Defendants to create a false report to retaliate against Plaintiff for a memo she previously submitted to WMC defending a doctor who cared for chronic pain patients.[132]

Under Kansas law, plaintiffs must prove four elements to state a claim for intentional infliction of emotional distress. First, the plaintiff must show the defendant's conduct was intentional, or in reckless disregard of plaintiff. Second, the defendant's conduct must be extreme and outrageous. Third, there must be a causal connection between the defendant's conduct and the plaintiff's emotional distress. And fourth, the plaintiff's emotional distress must be extreme and severe.[133]

Regarding the first two elements, Defendants' alleged action cannot be reasonably regarded as intentional, reckless, extreme or outrageous. Plaintiff alleges Defendants caused her distress by distributing the report to "the parties."[134] The Court understands these "parties" to be the WMC and the OMC.[135] While Plaintiff alleges collusion between WMC and Defendants, there are no facts supporting this conclusion. Thus, the Defendants'

---

[131] ECF No. 1-1 at 12.

[132] *Id.*

[133] *Balmer Fund, Inc. v. City of Harper*, 294 F. Supp. 3d 1136, 1151 (D. Kan. 2018); *Anspach v. Tomkins Industries, Inc.*, 817 F. Supp. 1499, 1506 (D. Kan. 1993), aff'd sub nom. *Anspach v. Sheet Metal Workers' Intern. Ass'n*, 51 F.3d 285 (10th Cir. 1995).

[134] ECF No. 1-1 at 12:15.

[135] *See id.* at 10:11 & 11:15.

mere distribution of a fitness-for-duty report to medical licensing agencies, as they were asked to do, fails to rise to the level reasonably regarded as extreme and outrageous conduct.[136]

Regarding the third and fourth elements, Plaintiff alleges the report caused her to be isolated from her family and friends, and caused situational insomnia, anxiety, agoraphobia, weight loss, infertility, and depression.[137] While these ailments may be deemed extreme and severe, Plaintiff fails to connect them to any concrete facts showing intentional and reckless disregard by Defendants. Without more facts, the mere creation of the report by Defendants in the course of conducting a requested fitness-for-duty evaluation fails to establish reckless intent.

Because Plaintiff's allegations are conclusory in nature and insufficient to raise Plaintiff's right to relief above speculation, the undersigned recommends dismissal of count twelve.[138]

## C.    Conclusion

The Court has undertaken a detailed and careful review of each of Plaintiff's claims. It has also construed Plaintiff's Complaint liberally, as required in *pro se* cases. However,

---

[136] *Deghand v. Wal–Mart Stores, Inc.*, 926 F. Supp. 1002, 1019 (D. Kan. 1996) (quoting *Anspach,* 817 F. Supp. at 1508, aff'd without op., 51 F.3d 285, 1995 WL 133385 (10th Cir.1995)) ("County are more akin to the kind of "ordinary business decisions ... made every day ... across the nation" as opposed to what a civilized society would call "atrocious, indecent, or utterly intolerable."")).
[137] ECF No. 1-1 at 12-13.
[138] *Balmer Fund*, 294 F. Supp. 3d at 1152; *S. Star Cent. Gas Pipeline, Inc. v. Cline*, 754 F.Supp.2d 1257, 1265 (D. Kan. 2010) (recognizing factual allegations that plaintiff experienced helplessness, vulnerability, and stress, without more, as insufficient as a matter of law to state a claim for intentional infliction of emotional distress).

the undersigned concludes recommendation of dismissal is appropriate in this matter.  First, Plaintiff's Complaint lacks subject matter jurisdiction because diversity jurisdiction is improperly pled.  Second, the Complaint fails to state a claim upon which relief can be granted, as required by 28 U.S.C. § 1915(e)(2)(B)(ii).   In this regard, Plaintiff's claims are conclusory in nature and lack sufficient facts to raise Plaintiff's right to relief above a speculative level.

**IT IS THEREFORE RECOMMENDED** Plaintiff's Complaint (**ECF No. 1**) be **DISMISSED** without prejudice for failure to properly plead diversity jurisdiction and failure to state a valid claim for relief under 28 U.S.C. § 1915(e)(2)(B)(ii).

**IT IS FURTHER RECOMMENDED** Plaintiff's Motion to Proceed Without Prepayment of Fees (**ECF No. 3,** *sealed*) be **DENIED**, but only in the event the District Judge disagrees with the above recommendation of dismissal and allows Plaintiff's claims to proceed.  The Clerk's Office shall mail a copy of this Report and Recommendation to Plaintiff by certified mail.

**IT IS SO ORDERED.**

Dated this 1st of July 2024 at Wichita, Kansas.

s/Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge